Index No.  24-cv-02626

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK~

DANA RACHLIN,

Plaintiff,

-against-

THE CITY OF NEW YORK, MAYOR OF THE CITY
OF NEW YORK ERIC ADAMS, NYPD CHIEF OF
DEPARTMENT JEFFREY MADDREY, NYPD
COMMUNITY COORDINATOR BRIAN ADAMS,
NYPD CHIEF OF PATROL JOHN CHELL, NYPD
INSPECTOR CRAIG EDELMAN, NYPD DEPUTY
DIRECTOR KAZ DAUGHTRY, and NYPD MEMBER
JOHN OR JANE DOE #  1-5,

Defendants.

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

*MURIEL GOODE-TRUFANT*
*Corporation Counsel*
*   of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*  Belina Anderson
*Tel:  (212)* 356-5376
*Matter No. 2024-036225*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ..................................................................... 1

PROCEDURAL HISTORY .......................................................................... 2

    A.    FOIL Requests and Stipulation ........................................................ 2

    B.    The Two Complaints ..................................................................... 2

    C.    Defendants' Motion to Dismiss ..................................................... 3

ALLEGATIONS ........................................................................................ 4

    D.    Plaintiff's Profile As a Prominent Criminal Justice Advocate and Community Activist ......................................... 4

    E.    The October 17, 2017 Assault, Report, Investigation, and Plaintiff's Decision Not to Pursue Charges ........................................................................ 4

    F.    Community and NYPD Conflict in 2020-2021 ............................... 5

    G.    The Conversation with Reverand McCall. ...................................... 6

    H.    Letter to Former NYPD Commissioner Keechant Sewell ........................................................................ 8

    I.    The Mock NYPD Memo ............................................................. 10

DAMAGES ............................................................................................. 11

LEGAL STANDARDS .............................................................................. 12

    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ................................................................................ 12

ARGUMENT .......................................................................................... 12

**Page**

POINT I

    FIRST AMENDMENT "STIGMA PLUS" (CLAIM 1) DEFAMATION AND RETALIATION (CLAIM 3)................................................................12

    A.   Plaintiff's Allegations do Not Tie Defendants to the Defamatory Statements ...................12

    B.   Stigma Plus ................................................................13

    C.   Retaliation ................................................................14

    D.   State Law Claims: Defamation and Any Others................................................................16

    E.   General Municipal Law ................................................................17

    F.   Defamation ................................................................17

POINT II

    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST DEFENDANT CITY FOR MUNICIPAL LIABILITY UNDER § 1983 AND MONELL (CLAIM NO. 2) ................................................................18

POINT III

    PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR DISCRIMINATION UNDER THE NYCHRL FOR GENDER-BASED VIOLENCE AND UNLAWFUL DISCRIMINATION AND/OR RETALIATION................................................................19

    A.   Gender-Based Violence ................................................................20

    B.   Unlawful Discrimination ................................................................20

CONCLUSION................................................................22

CERTIFICATION OF WORD COUNT ................................................................23

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                    <u>**Pages**</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 [2007]..................................................................................12

*Brest v. Hoggis,*
    180 AD 3d 83 (1st Dep't 2019) ...............................................................20

*Brian v. Richardson,*
    supra, 87 N.Y.2d 46 .................................................................................18

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986)..................................................................................18

*Clark v McGee,*
    49 NY2d 613 (1980) .................................................................................17

*Curley v. Village of Suffern,*
    268 F.3d 65 (2d Cir. 2001) .......................................................................15

*Curtis Publishing Co. v Butts,*
    388 US 130 (1967)....................................................................................17

*Davis v Boeheim,*
    24 N.Y.3d 262 ..........................................................................................18

*Davis v. Stratton,*
    360 F. App'x I 82, I 83 (2d Cir. 2010) ....................................................13

*Dillon v City of New York,*
    261 AD2d 34 (1st Dept. 1999) .................................................................17

*Dingle v. City of New York,*
    728 F. Supp. 2d 332 (S.D.N.Y. 2010) .....................................................17

*Dixon v City of New York,*
    2024 NY Misc. LEXIS 688 ......................................................................21

*Engelman v. Rofe,*
    194 AD3d 26 (1st Dep't 2021) ................................................................20

*Hamilton v. Riordan,*
    2008 U.S. Dist. LEXIS 69116 (S.D.N.Y. Sept. 11, 2008).......................19

iii

**Cases**                                                                   **Pages**

*Kipper v NYP Holdings Co., Inc.,*
    12 NY3d 348...........................................................................................17

*Krohn v. New York City Police Dep't,*
    2 NY3d 329 (2004) ................................................................................22

*Liberman v Gelstein,*
    80 NY2d 429 (1992) .............................................................................17

*Martinett v. Mangan,*
    2019 U.S. Dist. LEXIS 45320 ..............................................................19

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)................................................................3, 13, 18, 19

*Neu v. Corcoran,*
    869F.2d 662, 669-670 (2d Cir. 1989) ...................................................12

*Noonan v. City of New York,*
    2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. June 26, 2015) ........................19

*Outlaw v. City of Hartford,*
    884 F.3d 351 (2d Cir. 2018) .................................................................18

*Prinzivalle v. Farley,*
    2016 N.Y. Misc LEXIS 4999 ...............................................................21

*Reynolds v. Giuliani,*
    506 F.3d 183 (2d Cir. 2007) ................................................................19

*Rizza v. Black,*
    2012 U.S. Dist. LEXIS 77301 (E.D.N.Y. May 7, 2023) (Bloom, J.) .......14

*Sadallah v. City of Utica,*
    383 F.3d 34 (2nd Cir.2004) (Sotomayer, J.)..........................................13

*Searle v. Red Creek Cent. Sch. Dist.,*
    2023 U.S. App. LEXIS 11675 ..............................................................15

*Shara v. Maine-Endwell Cent. Sch. Dist.,*
    46 F.4th 77 (2d Cir. 2022) ...................................................................15

*Stukuls v State of New York,*
    42 NY2d 272 (1977)..............................................................................17

**Cases**                                                                                                     **Pages**

*Valmonte v. Bane,*
    18 F.3d 992 (2d Cir. 1994) ....................................................................................14

*Williams v. Woodhull Med. & Mental Health Ctr.,*
    891 F. Supp. 2d 301 (E.D.N.Y. 2012) (Bloom, J.)...............................................14

*Wray v. City of New York,*
    490 F.3d 189 (2d Cir. 2007) ..................................................................................18

*Wright v. City of Syracuse,*
    611 F. App'x 8 (2d Cir. 2015) ...............................................................................18

**Statutes**

42 U.S.C. 1982.............................................................................................................3

42 U.S.C. § 1983............................................................1, 3, 11, 12, 13, 14, 15, 18, 19

CPLR Rule 3016(a) ....................................................................................................17

Federal Rules of Civil Procedure 12(b)(6) .........................................................3, 12, 22

N.Y. Gen. Mun. Law §§ 50-e ....................................................................................17

NYC Admin. Code §§ 8-102, 502 ...............................................................................3

NYC Admin. Code § 8-502 ..................................................................................19, 22

NYC Admin. Code § 10-1102 ......................................................................................3

NYC Admin. Code §§ 10-1102, 1104, 1106 ..............................................................20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

DANA RACHLIN,

Case No.: 24-cv-02626

Plaintiff,

-against-

THE CITY OF NEW YORK, MAYOR OF THE CITY OF NEW YORK ERIC ADAMS, NYPD CHIEF OF DEPARTMENT JEFFREY MADDREY, NYPD COMMUNITY COORDINATOR BRIAN ADAMS, NYPD CHIEF OF PATROL JOHN CHELL, NYPD INSPECTOR CRAIG EDELMAN, NYPD DEPUTY DIRECTOR KAZ DAUGHTRY, and NYPD MEMBER JOHN OR JANE DOE # 1-5,

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendants.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

Assuming Plaintiff's allegations are true, Plaintiff was the victim of a rape and a smear campaign.  So her efforts to identify her perpetrators and hold them accountable are completely understandable.  But her legal claims are just not viable.

Victims cannot recover damages in either federal or state court for theories of liability such as negligent criminal investigation, detrimental reliance/"inducement" to report a crime, and negligent prosecution.   Plaintiff does not label her claims as such, but they are implicitly pled.  The allegations are a search in vain for cognizable claims.

With respect to the First Amendment defamation and retaliation claims, they are cognizable.  These claims, however, rely on Plaintiff attributing to the New York City Police Department ("NYPD") a motive to harm her reputation, because she criticized policing in poor communities.  But motive is not sufficient to state First Amendment claims.  Plaintiff cannot convert the NYPD's reasonable decision to stop partnering with a community advocate turned

1

virulent critic, *i.e.*, Plaintiff, into unconstitutional retaliation. This Court should dismiss the Amended Complaint as failing to state a federal claim and as an attempt at alternative pleading to obtain federal court jurisdiction over deficient state law tort claims.

## PROCEDURAL HISTORY

### A. FOIL Requests and Stipulation

Before Plaintiff commenced this lawsuit, NYPD comprehensively responded to Plaintiff's multiple pre-litigation requests under the New York State Public Officers Law, also known as the Freedom of Information Law ("FOIL"). In 2023, NYPD and Plaintiff entered into a stipulation to conclude Plaintiff's FOIL-related CPLR article 78 proceeding. *Matter of Rachlin v. New York City Police Dep't.*, (Index No. 153448/2023) (Sup Ct., N.Y. Cty.) (NYSCEF No. 17) ("FOIL Stipulation"). Pursuant to FOIL, NYPD provided, *inter alia*, records pertaining to the criminal investigations alleged in the Original and Amended Complaints, including an audio file of a "controlled call"; email and text messages, Amended Complaint, ¶131 fn. 13; and a list of any attempts to access records concerning Plaintiff, FOIL Stipulation, at 2. NYPD's FOIL search included the records of twelve individuals, including all individual defendants except for defendant Mayor of the City of New York, Eric Adams: 1) Chief of Department Jeffrey Maddrey, 2) Community Coordinator Brian Adams, 3) Chief of Patrol John Chell, 4) Inspector Craig Edelman, and 5) Deputy Director Kaz Daughtry. FOIL Stipulation, at 2-3.

### B. The Two Complaints

Plaintiff filed the Complaint on April 8, 2024. ECF No. 1. After a conference before Magistrate Judge Bloom in August 2024, Plaintiff agreed to amend her Original Complaint. ECF No. 24. Thereafter, a pending Internal Affairs Bureau ("IAB") investigation concluded and NYPD provided Plaintiff with the final report for that investigation, pursuant to the FOIL

stipulation.[1]  Defendants submitted a request to District Court Judge Frederick Block for a pre-Motion-to-Dismiss conference, which took place in November 2024.  Thereafter, Plaintiff filed the Amended Complaint on December 6, 2024. ECF No. 31.  The Amended Complaint dropped two claims from the original complaint (conspiracy and failure to prevent civil rights violations) but, otherwise, combined most of the original claims under an umbrella *Monell* claim.  *See id.*

Plaintiff now claims, under 42 U.S.C. § 1983, (1) First Amendment defamation; (2) municipal liability under *Monell* for (a) failure to train and/or supervise NYPD members how to conduct investigations into gender-based violence and (b) failing to investigate and/or discipline NYPD members for misconduct; (3) First Amendment retaliation; (4) failure to intervene/special duty; (5) protection from gender discrimination (NYC Admin. Code § 10-1102); and (6) unlawful discrimination and/or retaliation (NYC Admin. Code §§ 8-102, 502).  Plaintiff seeks compensatory damages, punitive damages, and attorneys fees.  *Id.* ¶¶146-156.

The Amended Complaint also dropped four Defendants, three former NYPD Commissioners and former Deputy of Commissioner of Collaborative Policing Chauncey Parker. Remaining Defendants are the City; the Mayor; Chief Maddrey; Chief Chell; Community Coordinator Adams,; Inspector Edelman; Deputy Director Daughtry; and NYPD Member John or Jane Doe #  1-5.

### C. Defendants' Motion to Dismiss

Defendants submit this Memorandum of Law in support of their motion to dismiss all claims in the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that: (1) the Amended Complaint fails to a claim, under 42 U.S.C. 1982 (nos. 1, 3),

---

[1] Footnote 13 of paragraph 131 has not been updated; it is inaccurate in stating that NYPD withheld all IAB file.  As stated above, NYPD provided one IAB report in the interim between filing of the Original Complaint and the Amended Complaint.  Shortly thereafter, Plaintiff identified an additional IAB investigation, but that investigation was ongoing.

state tort law (no. 4), or City administrative law (nos. 5, 6); and (2) the lack of an underlying federal claim compels dismissal of the *Monell* claim (no. 2).

## ALLEGATIONS

### D. Plaintiff's Profile As a Prominent Criminal Justice Advocate and Community Activist

Plaintiff alleges she is a non-profit Executive Director and a public safety expert who cultivated professional relationships with members of the community encompassed by the 79th Precinct in Brownsville, Brooklyn; high-ranking NYPD officials; and elected local officials. *See* Amended Complaint, ¶¶1, 23-24. Plaintiff is the Director of NYC Together, a foundation that provides services to at-risk youth in poor communities and is the Director of Precinct & Community Initiatives at John Jay College *Id.* ¶23.

From 2016 to 2021, Plaintiff "developed an active system of collaboration and open dialogue with several high-ranking members of NYPD, including [Chief] Maddrey," *id.* ¶25; *see also id.* ¶¶52-53.[2] In response to civil unrest arising out of incidents of racial injustice, Plaintiff and a partner formed an organization named "We Build the Block." *Id.* ¶52.

### E. The October 17, 2017 Assault, Report, Investigation, and Plaintiff's Decision Not to Pursue Charges

Plaintiff alleges she was sexually assaulted on October 17, 2017 by an acquaintance. *Id.* ¶26. She tried to call Chief Maddrey. *Id.* ¶28. Instead, she reaching Deputy Director Daughtry. *Id.* Plaintiff asked Daughtry to relay the message to Maddrey that she had an emergency and she needed to talk to him. *Id.*

---

[2] Plaintiff makes no further allegations about her employment history, including when she became Director of NYC Together or employed by John Jay College (a City entity); (2) and, if so, whether Plaintiff and NYC Together received grants, funding and/or other resources before, during, or after the alleged defamation occurred. *Id.* ¶¶76-78.

When Plaintiff spoke with Chief Maddrey, she told him she had been raped and assaulted. Maddrey advised her to go to a hospital, *id.* ¶29, where he met her and persuaded her to overcome her reluctance to file a report, *id.* ¶32, Maddrey informed her that NYPD's Sexual Violence Division ("SVD") would handle the investigation confidentially. *See id.* ¶¶ 34, 47.

Plaintiff further alleges that the subsequent SVD investigation included a "controlled call" between Plaintiff and her assailant, which SVD, initially, deemed successful. *Id.* ¶¶39-42. Plaintiff, however, was later informed during meetings with the Brooklyn District Attorney's Office that the controlled call was ended "prematurely" and, therefore, her continued cooperation would be necessary for prosecution of the case. *See id.* ¶¶43-44. Plaintiff chose not to pursue the charges and the case was closed, but she understood that she could reopen the investigation. *Id.* ¶¶48-49.

## F.   Community and NYPD Conflict in 2020-2021

Most actively in 2019 through 2020, Plaintiff "attempted to utilize her earned credibility by identifying NYPD members whose conduct has been particularly brutal toward young New Yorkers and requesting that they be precluded from posts that required routine engagement with young community members." *Id.* ¶55. Plaintiff targeted Inspector Edelman's conduct in the 73rd Precinct, encompassing Brownsville, Brooklyn. *Id.* ¶63. She repeatedly reported Edelman's conduct to high-ranking NPD members, including Chief Maddrey. *Id.* ¶63, ¶¶56-60. Plaintiff was also "in conflict" with Chief Chell; Plaintiff opposed his traditional policing policies. *Id.* ¶¶62, 67-68.

Plaintiff describes an incident that she alleges provoked antagonism from NYPD. She informed a talk show radio host about Inspector Edelman. *Id.* ¶65. Later on his show, the radio host asked former defendant and NYPD Commissioner Dermott Shea about Edelman. *Id.*¶67. Plaintiff alleges that Shea immediately reassigned Edelman after the show and

"Defendants correctly deduced that [Plaintiff] had informed [the radio host] about the ongoing conflict regarding Defendant Edelman's assignment, an allegation that [Plaintiff] did not refute." *Id.* ¶70; *see also id.* ¶71.

Plaintiff alleges "Defendants," including Chief Maddrey, held a meeting of NYPD Brooklyn North Commanders and other members and warned them not to permit Plaintiff "to enter NYPD precincts or continue her work in their jurisdiction. *Id.* ¶72. Defendants "barred [Plaintiff] from accessing public spaces, including public precinct locations." *Id.* In a separate meeting with NYPD subordinates in June 2020, Chief Chell stated, "[I]n sum and substance; [Plaintiff] should know we can humiliate her at any time" and directed a subordinate to inform Plaintiff of what he said. *Id.* ¶¶73-75.

After June 2020, Plaintiff alleges she was hindered in promoting and coordinating community events in Brownsville. *Id.* ¶76. She was "denied from and/or chilled in seeking grants and community partnerships and was forced to rearrange her practice to avoid areas where she was at stated risk of reprisal by Defendants." *Id.* She was also denied access to public precincts and other accommodations. *Id.* ¶77. As a result of threats against her and her inability to access public spaces with NYPD's 73rd precinct "catchment area," *id.* ¶80, Plaintiff continued her work in other parts of Brooklyn, including the 61st Precinct in Sheepshead Bay. *Id.* ¶79.

## G. The Conversation with Reverand McCall

Plaintiff describes non-party Reverend McCall as a Pastor and "social justice advocate." *Id.* ¶86. At a meeting on April 8, 2021, Reverand McCall told her that Community Coordinator Adams, and Chief Chell "had informed [him] and other community advocates that [Plaintiff's] reported rape had been fabricated in its entirety, and that [Plaintiff's] had attempted to falsely accuse a Black man of rape." *Id.* ¶90. She also alleges that "Defendants," *without specifying which ones*, further falsely stated to Reverend McCall that the NYPD had closed

6

[Plaintiff's] case because she was proven to have falsely reported her rape[,]" that Chief Chell had "personally conducted the controlled call between [Plaintiff]and her assailant, and that the call exonerated its target." *See id.* ¶¶90-92.[3]  Reverend McCall told her, "in sum and substance, if she did not admit that what she'd done, he was prepared to destroy her reputation using his social media platforms." *Id.* ¶¶ 88.  He also told Plaintiff, "in sum and substance," he was "on to her, and he would ensure that no community partners would work with her." *Id.* ¶93.  Plaintiff does not allege whether her attempt to persuade Reverand McCall of the veracity of her rape report was successful, nor whether Reverand McCall withdrew his threat to destroy her reputation.

Plaintiff continues with allegations that Community Coordinator Adams and Chief Chell "continued to make these defamatory claims against Ms. Rachlin to an unknown number of other individuals after [the McCall meeting on] April 8, 2021." *Id.* ¶95.  And "Defendants or individuals to whom they had disseminated these defamatory claims conveyed those claims to individuals at two (or three) organizations, as well as elected officials, upon whom [Plaintiff's] professional work relied." *Id.* ¶98.  Her business partner was also informed of Plaintiff's false rape report by "NYPD Sources." *Id.* ¶96.

The same day as the meeting with Reverand McCall, Plaintiff alleges she called Chief Maddrey and she pleaded with him "to put an end to this defamation campaign against her by Detectives and Maddrey's subordinates within the NYPD." *Id.* ¶¶ 100-101.  Maddrey responded, "[I]f they had anything, any part of this, it will be put to an end." *Id.* ¶105.  On April 12, 2021, Chief Maddrey texted her, "I spoke to everyone on my side, there will be no further issues." *Id.* ¶106.  Plaintiff alleges, however, Maddrey failed to supervise and/or intervene in the conduct of his subordinates. *Id.* ¶106.

---

[3] The Amended Complaint does not specify whether the false statements and claims were verbal *(i.e.,* libel) or written in texts, letters or other *(i.e.,* slander).

## H.  Letter to Former NYPD Commissioner Keechant Sewell

Plaintiff's allegations of slander describe a two-page letter circulated shortly after an article in the New York Times about non-party NYPD Captain Darby Saint Fort and We Build the Block. *See id.* ¶108; *see also* Exhibit 1.  The article addressed community policing, which is Plaintiff's "preferred method" for responding to crime instead of the "violent arrested-and-incarcerate policing" she denounced in 2020-2021.  *See id.* ¶¶108-110.  The author of the letter was anonymous, but sent "on behalf of the NYPD 61st Precinct members." *Id.* ¶111; *see also* Exhibit 1.

The letter was placed by person(s) unknown inside the pro-lockers of "multiple NYPD members," whose lockers are in a restricted area. *Id.* ¶113.  The letter was also sent by United States Post Office mailing, by persons unknown, to community members in the 61st Precinct, *id.* ¶114, "Citywide officials and representatives within the 61st Precinct zone in Kings County," *id.* ¶115, former defendant and Commissioner Sewell, non-party NYPD Deputy Scott Henderson, and former defendant and Deputy Commissioner of Collaborative Policing Parker, *id.* ¶116.

The letter focused on Captain Saint Fort, as Commanding Officer of the 61st Precinct, whose command had supposedly diminished morale among officers. Exhibit 1, at 1.  The letter accused Darby of protecting a gang member in 2021 and called for Darby to be disciplined and removed from his post. *Id.*  The letter stated Captain Darby "is part of an organization called We Build the Block," which helps kids leave gangs. *Id.* ¶113.  Darby had recently received media attention for his work with We Build the Block, and the letter accused Darby of protecting kids who are gang members so that the reputation of the organization would not be tarnished. *Id.*  The authors' social media and internet search revealed Plaintiff runs We Build the Block and Plaintiff is an advocate of social justice issues within the African American community. *Id.*

8

The letter continued, "[F]rom our research [Plaintiff] appears to have disdain for the NYPD that is clearly demonstrated on her social media." *Id.* The letter then asks, "Why is a person who hates NYPD policies involved in a partnership with an NYPD captain?" *Id.* The letter then purports to explain Plaintiff's "hatred" towards the NYPD as stemming from an "alleged rape in Fall 2018[4] by an African American man." *Id.* The letter added, "Due to the work of your Detectives and the [DA,] this crime was proven to be fabricated through inconsistent statements and video proof. *Id.* The letter further stated, "[Plaintiff] made a phone call to once again try to trap this innocent male but that failed." *Id.* Then, "[Plaintiff] was instructed to withdraw her complaint. We are told this is all documented in the NYPD Reports." *Id.*

The letter continued, "It's remarkable that we have an African American Commanding Officer, who is romantically involved [and it is public knowledge] with a fraudulent privileged white female Community Activist who hates the NYPD." *Id.* The letter continued to criticize Darby for focusing on African American males despite the community being comprised primarily of Caucasian, Asian, Russian, Indian, and Jewish citizens. *Id.* The letter concluded by repeating that Darby should be removed and requested prompt investigation by NYPD Internal Affairs Unit. *Id.*[5] Amended Complaint, Ex. 1, at 2.

## I.  **The Mock NYPD Memo**

The second exhibit to the Amended Complaint is a one-page memo received by U.S. mail by multiple individuals,[6] including members of the NYPD. *Id.*[7] The memo identifies

---

[4] Plaintiff alleges the assault took place in October of 2017. *Id.* ¶26.

[5] The entirety of Exhibit 2 is not legible. Pictures with text underneath and an image of a social media post are illegible. *See Id.* at 2.

[6] Plaintiff identifies one recipient as "Brooklyn North Executive Officer Defendant Scott Henderson." *See* Amended Complaint ¶122. This individual, however, is not named as a defendant in the initial or amended complaint.

[7] Plaintiff received this memo in response to one of her FOIL requests, as shown by the footer on the exhibit. *See id.,* Exhibit B.

Plaintiff, sets forth her address, her association with NYC Together and We Build the Block, and states she is on a "mission to brand NYPD as engaging in and [*sic*] systemic racism of over policing in neighborhoods with minorities." *Id.* The memo continues, Plaintiff "seduces police officers to gain access to NYPD database[s;]" used her friendship with Darby and other officers to access the "Gang Databases," and "shared information with known gang members resulting in a surplus of avoidable crime." *Id.*

The memo then states, "Plaintiff falsely pressed charges that on October 23, 2018,[8] a "'Black' man visiting from the State of Georgia engaged in sexual advances [at a Brooklyn hotel.]" *Id.* The memo continued, "Det. Weber from the [SVD] investigated the claim and closed the case after surveillance footage of the hotel revealed that [Plaintiff] was the one [engaging in sexually harassing behavior]." *Id.* Then the memo stated, "Given [Plaintiff's] gamesmanship bullying the NYPD, the [SVD] closed the case without any charges against [Plaintiff]." *Id.* The memo then claims Plaintiff induced the Borough Commander not to flag an incident involving a member of NYC Together, a known gang member," who had a loaded firearm. *Id.* The memo concludes by stating that Plaintiff accused NYPD on Twitter of "state & racism." *Id.*

Relying upon documents provided to Plaintiff pursuant to her FOIL requests, Plaintiff alleges Community Coordinator Adams shared these posts with Inspector Edelman and former defendant and Deputy Commissioner of Collaborative Policing Parker by texting and writing that he would be "speaking to all the bosses about her." Amended Complaint, ¶133. She further alleges that Adams exchanged additional text messages about Plaintiff with non-party Reverend McCall, *id.* ¶134, and "inter-departmentally," *id.* ¶135. The Amended Complaint does not set forth quotes from these texts messages obtained through FOIL.

---

[8] Plaintiff alleges she was assaulted on October 17, 2017. Amended Complaint, ¶26.

## DAMAGES

The Amended Complaint alleges Defendants:

a.  inflicted reputational harm affecting Plaintiff's professional work;
b.  discouraged Plaintiff from taking public-facing roles to further her organization's work and forced Plaintiff to change the location of her programming to her organization's detriment, reduced participation, and pecuniary lost.
c.  caused Plaintiff to be precluded from consideration for grants and/or contracts generated and/or approved by Defendant City.
d.  "chilled [Plaintiff's] constitutionally protected conduct by discouraging her from seeking professional opportunities for fear of being forced to share the details [of] her sexual assault and defend the veracity of her valid claims.
e.  induced community partners and government actors to refuse to work with Plaintiff by damaging her reputation.
f.  disseminated Plaintiff's home address in a false and inflammatory memo, intentionally creating a direct threat to Plaintiff's safety.
g.  caused Plaintiff to expend significant costs on home security systems, moving costs, and depriving her of the quiet enjoyment of her home.
h.  forced Plaintiff to expend costs rebranding her organization, crisis management public relations, and image rehabilitation.
i.  caused emotional and psychological damages.

¶¶ 146-156.

Under the First Amendment claim (First), Plaintiff also includes a somewhat duplicative list of "property and liberty interests," of which Defendants have deprived her:

a)  professional, opportunities, contracts, and collaborative agreements related to Plaintiff's work as a community service provider and nonprofit executive.
b)  Plaintiff's ability to conduct her work in public space within the 73rd Precinct geographic area and to enter public spaces in the building.
c)  Plaintiff's professional reputation and relationships.
d)  Plaintiff's professional relationships.
e)  reduced funding for community-based work.
f)  the right to enter the area encompassed by the 73rd Precinct, including the entire neighborhood of Brownsville, Brooklyn, without fear of reprisal.
g)  the right to enter any NYPD precincts and other police-controlled public accommodations; and
h)  the interest of Plaintiff's enjoyment of her property and her home.

Amended Complaint, ¶173.

## LEGAL STANDARDS

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to FRCP 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). Bald assertions and conclusions of law will not suffice. *Neu v. Corcoran*, 869 F.2d 662, 669-670 (2d Cir. 1989), *cert. denied* 493 U.S. 816 (1989).

## ARGUMENT

## POINT I

## PLAINTIFF DOES NOT STATE A FIRST AMENDMENT "STIGMA PLUS" (CLAIM 1) DEFAMATION OR RETALIATION (CLAIM 3)

### A. Plaintiff's Allegations Do Not Link Defendants to the Defamatory Statements

The First Amendment claims (First and Third) should be dismissed against defendants Mayor Adams, Inspector Edelman, and Deputy Director Daughtry for failure to state a claim as against each of them. The Amended Complaint does not contain a single allegation that the Mayor, Edelman, or Daughtry wrote or verbally made any of the defamatory statements. Nor does Plaintiff allege that any of the individual Defendants *wrote* either of the libelous exhibits, the letter or the memo.

The Amended Complaint replicates the allegations in the Original Complaint, almost all of which refer to "Defendants" monolithically. The allegations sweepingly state that Defendants, including John or Jane Doe # 1-5, produced the defamatory statements and engaged

in the retaliatory behavior. Essentially, Plaintiff alleges that someone . . . anyone . . . they . . . one of them . . . any of them . . . all of them . . . at NYPD defamed her.

 The closest Plaintiff comes to attributing any defamatory statements to any particular individual defendant is her allegation, upon information and belief, that Community Coordinator Adams and Chief Chell falsely informed non-party Reverand McCall and other unnamed community advocates that Plaintiff's rape report was fabricated, and she had attempted to falsely accuse a Black man of rape, and that the investigation was closed because she was proven to have falsely reported her rape, and the controlled call exonerated its target. *Id.* ¶¶90-92; *see also* ¶73. As clearly shown below, even assuming any one or all of the Defendants made the allegedly defamatory statements, Plaintiff fails to allege First Amendment violations. [9]

**B.** **Stigma Plus**

 Defamation is a state law tort, not a claim arising under 42 U.S.C. § 1983. To state a federal claim, Plaintiff must plead defamation plus a material state-imposed burden or change in status or rights. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2ⁿᵈ Cir.2004) (Sotomayer, J.) (elements are: (1) statement injurious to reputation, that is claimed to be, and capable of being proved, false and (2) state-imposed burden affecting status or rights). A First Amendment defamation claim requires "stigma plus." Here, Plaintiff cannot satisfy the "plus" element, because she not alleged a *state*-imposed burden on her career as a community organizer and not-for-profit entrepreneur.

 A state-imposed burden is in the nature of a government-administered or government-maintained formal program, licensure or permitting, registry, list or other compilation of information that is available to the public or to particular classes of individuals or entities that

---

[9] As discussed further in Point II (*Monell*), claims against Defendants in their official capacities as City officials should be dismissed as unnecessary. *See Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010).

share a common interest. *Compare Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) (individuals listed on the "unique" child abuse registry lose employment opportunities they would have received but for their listing) *with Neu,* 869 F.2d 662, *supra* (state official's statements causing other states to take action against Plaintiff not stigma plus); *Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301 (E.D.N.Y. 2012) (Bloom, J.) (non-tenured public employees lack property interest in continued employment; stigma plus claims defeated by availability of an article 78 proceeding providing name-clearing hearing); *Rizza v. Black*, 2012 U.S. Dist. LEXIS 77301, * 15 (E.D.N.Y. May 7, 2023) (Bloom, J.) (teacher's unsatisfactory rating, alone, not "stigma-plus").

Plaintiff does not allege the NYPD issues licenses or permits, or administers any formal program, registry, list or otherwise compiles information about her or other NYPD critics that is available for viewing by the grant-making community, elected and appointed officials, potential employers, not-for-profit entities, and criminal justice organizations when evaluating potential employees, grantees, liaisons, partners, contractors, or service providers such as Plaintiff. Plaintiff amended the Complaint by adding the rote allegation that Defendants "imposed a state-imposed burden or state-imposed alteration of Plaintiff's status or rights." Amended Complaint, ¶160. Doing no more than reciting the "stigma plus" doctrine did not cure the deficiency of the Plaintiff's First Amendment claim.

### C. **Retaliation**

When a private citizen alleges retaliation by a government actor for speech, he must show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Plaintiff cannot plead a valid retaliation claim.

14

Even assuming *arguendo* Plaintiff satisfies the first element of a federal retaliation claim - that her speech criticizing the NYPD is protected - she has not alleged actual "chilling." Plaintiff vaguely and generally alleges she "suffered actual harm and "chill," including in that NYPD prevented and/or deterred [her] from or impeded [her] from engaging in protected conduct on the date of and after the incident [not specified], including her right to be lawfully present in public spaces and/or to associate with neighbors and members of the community; and/or suffered adverse effects on her protected speech and/or conduct; and/or otherwise suffered some concrete harm(s)." Amended Complaint, ¶ 224. Plaintiff further alleges only that she "has changed the location of her programming" from one Brooklyn precinct to another, but does not allege a single instance in which she did not reach out or respond to media about the NYPD or, for example, refrained from advocating about criminal justice on social media, lobbying elected officials, or otherwise. *See Curley*, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Searle v. Red Creek Cent. Sch. Dist.*, 2023 U.S. App. LEXIS 11675, *5.

Nor has Plaintiff alleged the element of causation between NYPD ending their collaboration and Plaintiff's public criticism of NYPD. *See Shara v. Maine-Endwell Cent. Sch. Dist.,* 46 F.4th 77, 82 (2d Cir. 2022) (must show causal connection between the speech and the adverse action). Taken as true, Plaintiff's allegations describe an ugly, but common theme in grass roots politics: alliance, rupture, conflict, and estrangement. When old alliances end, new ones are forged. This is the nature of community organizing.

Plaintiff includes two lists of purported "property and liberty interests," including the "right to enter the area encompassed by the 73rd Precinct, including the entire neighborhood of Brownsville, Brooklyn" and being discouraged from seeking professional opportunities for fear

of being forced to share details of her sexual assault. Amended Complaint, ¶¶ 150, 173.b; *see also supra*, at 11. Again, Plaintiff implicitly, but not expressly, pleads state law tort claims, such as tortious interference with contracts and/or economic opportunity. Such "deprivations" are not of constitutional dimension.

Defendants here held or hold positions that require them be aware of, manage, and foster community relations. They had appropriate and legitimate reasons to stop promoting Plaintiff and her organizations, stop collaborating with her, and to exclude her from police-organized events. NYPD repudiated Plaintiff as an ally in the 73rd precinct after she, by her own allegations, used her position of prominence to criticize the NYPD as brutal and racist through social and traditional media, and to effect internal operations by pressuring NYPD officials to fire, reassign, reprimand, and/or discipline certain members, in particular Inspector Edelman and chief Chell. Defendants withdrew from a formerly fruitful, positive partnership with Plaintiff, no longer providing access to influential members of the NYPD, resources, or privileges, because NYPD no longer trusted her and her actions were detrimental to NYPD community relations and reputation. This was not retaliation. Defendants made a legitimate, reasonable decision to end a partnership that had turned sour - indeed - rancid.

### D. **State Law Claims: Defamation and Any Others**

Even if the Court were to read Plaintiff's allegations as stating a common law defamation cause of action, this Court should not exercise jurisdiction over the claim for multiple reasons. Should the Court decide otherwise and take jurisdiction, the Court should dismiss the state law claims for procedural and substantive reasons.

### A. **General Municipal Law**

To the extent this Court deems the Complaint to plead New York State law claims, they should be dismissed because Plaintiff failed to fulfill a condition precedent to suit by

timely serving Notices of Claim on the City of New York. *See generally* N.Y. Gen. Mun. Law §§ 50-e; 50-i; 50-k. Moreover, this Court cannot grant Plaintiff permission to file a late Notice of Claim, *Dingle v. City of New York*, 728 F. Supp. 2d 332, 348-349 (S.D.N.Y. 2010) which, would be of no avail, because the 1-year plus 90-day statute of limitations passed before Plaintiff filed the Original Complaint. This combination of procedural requirements is fatal to Plaintiff's state law claims.

### B. Defamation

Elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and must either cause special harm or constitute defamation per se." *Dillon v City of New York*, 261 AD2d 34, 38 (1st Dept. 1999). CPLR Rule 3016(a) states: "Libel or slander. In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."

Even if Plaintiff has pled defamation, Defendants would successfully assert the following defenses: 1) absolute privilege, *see Stukuls v State of New York*, 42 NY2d 272, 278 (1977) (high officials who are "entrusted by law with administrative or executive policy making responsibilities should be able to speak candidly without risk of liability," *Clark v McGee*, 49 NY2d 613, 617-618 (1980); 2) qualified privilege, *Stukuls supra* (bona fide communications with parties in common interest); *Liberman v Gelstein*, 80 N.Y.2d 429 (1992); 3) Plaintiff is a public figure in the Brooklyn and criminal justice communities, *Curtis Publishing Co. v Butts*, 388 US 130 (1967) (cannot recover damages unless "actual malice" proven by clear and convincing evidence); *see also Kipper v NYP Holdings Co., Inc.*, 12 NY3d 348, 353 (2009); *Cruz v. Fox Corp.* (Sup. Ct. Bronx Cty. 2020) (Index No. 27505/19E), at 5; 4) Defendants were expressing opinion,

*see, e.g., Davis v Boeheim*, 24 N.Y.3d 262 [2014]; *Brian v. Richardson*, supra, 87 N.Y.2d 46, 53-54. Plaintiff's narrative describes the ugly side of social justice advocacy, which can involve rivalries between activists competing for funds, influence, and access. To the extent Defendants discussed Plaintiff, their statements were reasonable and defensible and, otherwise, Plaintiff cannot link the memo and the letter to any of them.

### POINT II

### PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST DEFENDANT CITY FOR MUNICIPAL LIABILITY UNDER § 1983 AND *MONELL* (CLAIM NO. 2)

A *Monell* claim under section 1983 is dependent on the existence of an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), *cert. denied* 476 U.S. 1154 (1986); *Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015). Here, Plaintiff has failed to state a viable federal claim on which to base liability upon the City under *Monell.* Even assuming *arguendo* Plaintiff has pled an independent constitutional violation, her allegations do not suffice to plead that any NYPD formal policy or custom deprived her of a constitutional right. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007).

The Amended Complaint's omnibus allegations citing to investigations into systemic issues at NYPD, articles advocating for reform of the NYPD, and lawsuits about non-parties' conduct directed at non-parties, cannot impose *Monell* liability. Plaintiff does not plead facts showing that any Defendant(s) knew that it was likely any other defendant(s) would defame or retaliate against her as a sexual assault victim. Nor does Plaintiff identify the policies, customs, or practices that caused Plaintiff reputational harm about which any defendant(s) showed

"deliberate indifference" to the point of moral certainty. *See Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (municipal policy or custom must be the "moving force" behind any constitutional violation); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *Martinett v. Mangan*, 2019 U.S. Dist. LEXIS 45320, *29-32 ("Plaintiff does not allege that any prior investigations were unreasonably performed, nor has Plaintiff identified any policy makers who were involved in the investigation of Plaintiff's reports of assault, or who had witnessed or were aware of anything that would put them on notice that [the agency] had insufficient policies or training in place to address incidents of student-on-student sexual assault: Plaintiff merely makes conclusory assertions that School District employees were improperly trained to handle sexual assault allegations."); *Noonan v. City of New York*, 2015 U.S. Dist. LEXIS 83451, *7-14 (S.D.N.Y. June 26, 2015).

The claim for breach of duty to protection/failure to intervene (No. 4) is, essentially, a state law "special duty" theory of tort liability. Failure by state officials to provide special protection to someone who is not in a custodial setting is usually not actionable under section 1983, except rarely when the state played a significant role in creating a substantial risk of serious harm. *Hamilton v. Riordan*, 2008 U.S. Dist. LEXIS 69116, *3-4 (S.D.N.Y. Sept. 11, 2008). Therefore, this claim does not provide the predicate federal claim for *Monell* liability.

## POINT VIII

### PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR DISCRIMINATION UNDER THE NYCHRL FOR GENDER-BASED VIOLENCE AND UNLAWFUL DISCRIMINATION AND/OR RETALIATION

New York City's Human Rights Law (HRL) provides a private cause of action for victims of gender-based violence and a civil right of action for persons aggrieved by unlawful

discriminatory practices. NYC Admin. Code § 8-502. Plaintiff's City administrative law claims fail and this Court should not take jurisdiction to decide them.

As a threshold matter, courts have held that the HRL does not apply to police-citizen encounters because a police officer's discharge of his duties is not providing a service, accommodation, or act within the HRL. *O'Brien v. City of Syracuse*, 2023 U.S. Dist. LEXIS 164918, *75 (citing *D.H. v. City of New York*, 309 F. Supp. 3d 52, 81 (S.D.N.Y. 2018); *see also Donovan v. Norwich City Sch. Dist.*, No. 3:19-cv-1638, 2022 U.S. Dist. LEXIS 37962, 2022 WL 623904, *19 (N.D.N.Y. Mar. 3, 2022); *Letray v. N.Y.S. Div. of Hum. Rts.*, 181 A.D.3d 1296, 1297, 121 N.Y.S.3d 481 (4th Dep't 2020). Should this Court decide otherwise, Plaintiff has failed to state claims under the HRL.

### A. Gender-Based Violence

A sexual assault is a crime motivated by gender animus. *See Brest v. Hoggi*s, 180 AD 3d 83, 94 (1st Dep't 2019). To state a cause of action for gender-based violence, Plaintiff must allege one or more Defendants committed, directed, enabled, participated in, or conspired to commit a gender-motivated crime of violence. Such crime of violence must be proven by a preponderance of the evidence. *See,* NYC Admin. Code §§ 10-1102, 1104, 1106.

Plaintiff alleges, "Although [Plaintiff's] 2017 assault was not perpetrated by an NYPD member, Defendants' actions against her constitute sexual misconduct and are intrinsically related to her status as a victim of sexual abuse." Amended Complaint, ¶196. Defendants interpret Plaintiff as asserting that, by defaming Plaintiff about the sexual assault, Defendants committed a crime of gender-based violence. But defamation does not fall within the definition of gender-based violence. *See Engelman v. Rofe*, 194 AD3d 26, 29 (1st Dep't 2021). Nor can Plaintiff stretch a cause of action for a crime of gender-based violence, here, to include some theory of

"enabling defamation" or "aiding and abetting" a crime of gender-based violence by defamation. Certainly Plaintiff cannot do so here, when the alleged defamation occurred *after* the sexual assault and, therefore, could not have retrospectively enabled the 2021 assault.

## B. Unlawful Discrimination

Plaintiff alleges that she is in a protected class under the HRL and Defendants unlawfully discriminated against her in two ways. First, Defendants denied her free and equal access to a public accommodations as set forth in section 8-107(4) and 8-107(28)(b). Second, Defendants retaliated against her for engaging in protected conduct. As with the federal and state claims, Plaintiff's allegations do not state violations of the City's HRL.

The term "place or provider of public accommodation" includes providers of goods, services, facilities, accommodations, advantages or privileges and places, where goods, services, facilities, accommodations, advantages or privileges are offered, sold, or made available. Section 8-102.2. Individuals with protected status shall not be denied public accommodations. Section 8-107(4). And section 8-107(28)(b) requires someone who owns or manages public accommodations to engage in a cooperative dialogue with a protected class member within a reasonable time after that protected class member requests an accommodation.

Even assuming the NYPD is a provider of public accommodation, Plaintiff has not alleged clearly what were the nature of the accommodations she was denied, when, where, and for what purpose she needed the public accommodation. She has merely pled another non-cognizable iteration of her First Amendment retaliation claim. As demonstrated above, Defendants had permissible, non-discriminatory reasons to end their partnership with Plaintiff that had nothing to do with her gender or status as the victim of a sexual assault. *See Dixon v City of New York*, 2024 NY Misc. LEXIS 688 *10-11.

Finally, Plaintiff cannot recover punitive damages under Section 8-502. *Krohn v. New York City Police Dep't*, 2 NY3d 329, 333 (2004) (answering question certified to the Court by the Second Circuit); *Krohn v. N.Y. City Police Dep't*, 372 F.3d 83, 86 (2nd Cir. 2004) (affirming district court's judgment vacating punitive damages award against City after Court of Appeals answered certified question whether punitive damages were recoverable under HRL).

## **CONCLUSION**

Plaintiff complains that NYPD promotes violence and other misconduct and, rather than punishing its members, retaliates against those, such as Plaintiff, who criticize the NYPD. Plaintiff fails to allege a connection between the generalized allegations about the NYPD and the specific, individual Defendants. For the foregoing reasons, the Court should grant Defendants' motion to dismiss, pursuant to Rule 12(b)(6), the Complaint in its entirety with prejudice, and decline to assert jurisdiction over the New York State and City law claims.

Dated: New York, New York
February 14, 2025

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
*Attorney for City Defendants*
100 Church Street
New York, New York 10007
(212) 356-4367

By: _____
  Belina Anderson
  Assistant Corporation Counsel

22

## <u>CERTIFICATION OF WORD COUNT</u>

I, hereby, certify pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the total number of words in the foregoing document, exclusive of the caption, index, table of contents, table of authorities, and signature block, but inclusive of footnotes or endnotes, is below 8,750 words according to the "Word Count" function of Microsoft Word 2010, the word-processing system used to prepare the document, and thus that the document complies with the word count limit set forth in Rule Rule 7.1(c).

Dated:       New York, New York
             February 5, 2025

By: _____
    Belina Anderson
    Assistant Corporation Counsel