UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DANA RACHLIN,

*Plaintiff,*

-against-

Index No.: 24-cv-02626 (FB)

THE CITY OF NEW YORK, ET AL.,

*Defendants*

---

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISSS**

---

**Dated:** March 14, 2025

KAISHIAN & MORTAZAVI LLC
*Attorneys for Plaintiff*

By: Maryanne K Kaishian, Esq.
55 Washington St., Suite 508
Brooklyn, New York 11201
T: (347) 662-2421
E: eservice@kaishianlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

    CASES ..................................................................................................ii

    RULES ..................................................................................................iv

    STATUTES ..............................................................................................v

    OTHER AUTHORITIES ..............................................................................v

PRELIMINARY STATEMENT ............................................................................ I

    STATEMENT OF FACTS ...........................................................................2

    RELEVANT PROCEDURAL HISTORY .........................................................5

    STANDARD OF REVIEW ..........................................................................7

ARGUMENT ....................................................................................................9

    I. PLAINTIFF SUFFICIENTLY PLED HER CLAIMS FOR § 1983 DEFAMATION (STIGMA PLUS) AND FIRST AMENDMENT RETALIATION. ..................................9

        **A. Plaintiff has met her burden in establishing the "Plus" element of "Stigma Plus."** ............................................................................12

        **B. Plaintiff has sufficiently pled facts establishing her claim for First Amendment Retaliation.** ..........................................................13

    II. PLAINTIFF SUFFICIENTLY PLED FACTS ESTABLISHING MUNICIPAL LIABILITY UNDER *MONELL*. ..........................................................................15

        **A. Plaintiff sufficiently pled claims for Failure to Train and/or Supervise under *Monell*.** ......................................................................15

        **B. Plaintiff's Failure to Investigate and/or Discipline claims are well-pled** ..................17

    III. PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS ARE WELL-PLED. ..................18

        **A. Contrary to Defendants' claims and in accordance with applicable law, police departments are service providers subject to liability under the NYCHRL.** ..................19

        **B. Plaintiff's claim pursuant to NYCHRL § 10-1102, *et seq.*, is sufficiently pled.** ..................20

            *i. Violent offenses are classified by statute, not in accordance with the colloquial understanding of terms such as "violent crimes."* ..................20

            *ii. Plaintiff has sufficiently pled both elements of "crime of violence" under NYCHRL § 10-1103* ..................21

            *iii. Plaintiff sufficiently alleged that this conduct was motivated by her gender.* ..................22

        **C. Plaintiff's claim for Unlawful Discrimination and/or Retaliation under NYCHRL §§ 8-102, 8-107, and related provisions is sufficiently pled.** ..................23

    IV. DEFENDANTS' REMAINING CONTENTIONS ARE WITHOUT MERIT ..................23

        **A. Plaintiff has sufficiently pled facts establishing Defendants' Failure to Intervene.** ..................23

        **B. Plaintiff is entitled to the relief requested.** ..................25

## TABLE OF AUTHORITIES

### Cases

*Abdulgalil Kaid Alwan v City of NY*, 311 F Supp 3d 570, 574 (E.D.N.Y. 2018) ........................ 15

*Agosto v N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) ................................................ 17

*Anderson v Branen*, 17 F3d 552 (2d Cir 1994) ............................................................................ 24

*Ashcroft v Iqbal,* 556 US 662, 680 (2008) ...................................................................................... 6

*Avila v Tenzie*, No. 19CIV11920VECGWG, 2021 WL 2882445 ................................................ 24

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007) ....................................................... 5, 9

*Brass v American Film Technologies, Inc.,* 987 F.2d 142 (1993) ................................................... 5

*Breton v City of New York*, 404 F. Supp. 3d 799, 815 (S.D.N.Y. 2019) ..................................... 10

*Cahill v. Rosa*, 651 N.Y.S.2d 344 (N.Y. 1996) .......................................................................... 18

*Carter v HealthPort Tech., LLC*, 822 F3d 47, 51 (2d Cir 2016) ................................................... 6

*Case, et al. v City of N.Y., et al.,* 233 F. Supp. 3d 372, 382 (S.D.N.Y. 2017) .............................. 5

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989) ................................................................... 16

*Corp. v Twombly*, 550 U.S. 544, 570 (2007) ................................................................................. 5

*D.H. v City of New York*, 309 F. Supp. 3d 52 (S.D.N.Y. 2018) ................................................... 18

*DiFolco v MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir 2010) ................................................. 6

*Doe v Doe*, 2024 NY Slip Op 24065 (NY County) ...................................................................... 20

*Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) .................................................................. 24

*Hogan v Fisher*, 738 F.3d 509 (2d Cir. 2015) ............................................................................... 8

*Keles v Yearwood,* 254 F Supp 3d 466, 471 (E.D.N.Y. 2017) .................................................... 17

*Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020) .................................................... 16

*Matter of LeTray v New York State Div. of Human Rights*, 181 A.D.3d 1296 ...................... 18, 19

*Nassau County Emple. "L" v County of Nassau*, 345 F Supp 2d 293, 302 (E.D.N.Y. 2004) ....... 14

*Nogbou v Mayrose*, 400 Fed. Appx. 617 (2d Cir. 2010) ................................................................ 5

*Nunez v Goord*, 172 F. Supp. 2d 417,430 (S.D.N.Y. 2001) ......................................................... 24

*O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir 1988) ................................................................... 24

*Osterhoudt v City of NY*, 2012 US Dist LEXIS 139700, at *7 ...................................................... 9

*Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ........................................................ 15, 16

*Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir 1997) ............................................. 24

*Sadallah v City of Utica*, 383 F3d 34, 36 (2d Cir 2004) .......................................................... 10, 11

*SEC v Medallion Fin. Corp.*, 2022 U.S. Dist. LEXIS 137463 ....................................................... 6

*Serrata v Givens*, 2019 U.S. Dist. LEXIS 64277 (E.D.N.Y. 2019) .............................................. 10

*Shamir v City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015) ............................................................. 5

*Sillam v Labaton Sucharow LLP*, 2022 U.S. Dist. LEXIS 63516 ................................................. 6

*Sullivan v Bdg Media*, 71 Misc 3d 863, 865 (Sup Ct, NY County 2021) .................................... 18

*Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 US 308, 322 (2007) ....................................... 6, 7

*Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) .............................................................. 25

*Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) ................................................... 16

*Velez v Levy*, 401 F3d 75, 89 (2d Cir 2005) .............................................................................. 11

*Williams v New York City Hous. Auth.*, 61 AD3d 62, 66-67 (1st Dept 2009) ............................. 18

<u>Rules</u>

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................... 5
Rule 12(b)(6) ............................................................................................................................. passim
Rule 15(c)(1)(c) .................................................................................................................................. 8
Rule 41(a) ............................................................................................................................................ 5
Rule 56 ................................................................................................................................................ 6

Statutes

42 U.S.C. § 1983.................................................................................................7, 8, 15

C.P.L.R. § 1024 ..........................................................................................................8

GML § 50-E.............................................................................................................17

GML § 50-H.............................................................................................................17

NYCHRL § 10-1102 ...............................................................................17, 19, 20, 22

NYCHRL § 10-1103................................................................................19, 20, 21, 22

NYCHRL § 10-1104................................................................................................19

NYCHRL § 8-102.............................................................................................22, 23

Penal Law § 130 .....................................................................................................23

Penal Law § 265.03 ................................................................................................20

Penal Law § 70.02 ..................................................................................................20

Public Officer's Law § 87.........................................................................................4

Other Authorities

NOTES: POLICE MISCONDUCT AND THE DUTY TO INTERVENE: WHY STOP AT EXCESSIVE FORCE?, 73 Syracuse L. Rev. 397 .........................................................................25

<u>PRELIMINARY STATEMENT</u>

In May 2020, the Police Officer Derek Chauvin violently and publicly suffocated George Floyd to death in Minneapolis, Minnesota over the course of nine minutes and 29 seconds.[1] In the days and months that followed, police departments across the country, including the New York City Police Department (NYPD), were forced to confront decades worth of demands to reckon with their own histories of abuse and to implement community-oriented changes.[2] By June of that year, the NYPD was fully in the throes of its own crises concerning both its public image and a widening internal schism between advocates of less-violent policing methods, known collectively as "community-led policing," and those who strongly preferred traditional policing methods featuring aggressive, frequent, violent, arrest-oriented, and police-initiated street encounters.[3]

Prior to 2020, Plaintiff Dana Rachlin ("Plaintiff" or "Ms. Rachlin") developed working partnerships with City policymakers and fostered these relationships in her role as the Executive Director of We Build the Block[4], a nonprofit organization whose central mission is to provide New York City youth within resource-deprived communities with necessary support, advocacy, and care. It was in this context that Plaintiff believed she could effectively and safely advocate for policy change given her status as a nonprofit director and safety expert with extensive, professionally cultivated relationships. Defendants were determined to prove she was mistaken.

---

[1] *See, e.g.* Evan Hill, Ainara Tiefenthaler, How George Floyd Was Killed in Police Custody, THE NEW YORK TIMES, May 31, 2020 *available at* https://www.nytimes.com/2020/05/31/us/george-floyd-investigation.html (last visited March 1, 2025).

[2] *See, e.g.*, FAC ¶¶ 52-75.

[3] *See, e.g.*, Saki Knafo, *Bridging the Divide Between the Police and the Policed*, THE NEW YORKER, April 28, 2021, *available at* https://www.newyorker.com/news/our-local-correspondents/bridging-the-divide-between-the-police-and-the-policed ("Unfortunately, violence interrupters were not viewed as legitimate by many of my peers," [an NYPD Captain] told [Saki Knafo], in an email."I decided to lean on the community, even though it felt like a risk to my professional career.") (last visited March 1, 2025); First Amended Verified Complaint (FAC) ¶¶ 81-85.

[4] NYC Together, d/b/a We Build the Block; *see* We Build the Block: About Us, *available at* https://webuildtheblock.org/about-us/.

Though Plaintiff was unique in neither her criticism of the NYPD's well-documented history of violence nor her support for community-led policing, Plaintiff's stated positions[5] presented Defendants, already feeling trapped by the rising tide of social change, with a threat taken far more seriously than criticism from the average New Yorker. Plaintiff was a well-respected safety expert[6] with media contacts[7], and her opinion was credited by both City and certain NYPD officials with policymaking power. Perhaps most importantly, Plaintiff had been granted a practically unprecedented level of access to internal NYPD affairs, even maintaining a desk in the office of Defendant Jeffrey Maddrey, the former NYPD Chief of Department. Not only were Defendants aware that Plaintiff could leverage her credibility and firsthand knowledge of serious NYPD misconduct to force changes within the Department at a time these changes were more likely than ever before[8], but Plaintiff's perceived betrayal of Defendants was spit in the face of the departmental largess Defendants had bestowed upon her.

STATEMENT OF FACTS

*"That wasn't a good move." — text message sent from Defendant Jeffrey Maddrey, Former NYPD Chief of Department, to Plaintiff Dana Rachlin*

Plaintiff is a survivor of sexual assault, having been raped by an acquaintance in 2017.[9] Following this assault, Plaintiff contacted Defendant Jeffrey Maddrey, who met Plaintiff at the hospital, observed her physical injuries, and urged her to pursue charges for the rape, assuring her

---

[5] *See, e.g.*, FAC ¶¶ 56-63.
[6] *See, e.g.*, FAC ¶¶ 1, 52-55.
[7] *See, e.g.*, FAC ¶¶ 64-74
[8] *See, e.g.*, FAC ¶¶ 64-68 (alleging Defendants were aware that Plaintiff influenced the June 2020 transfer of a Defendant Craig Edelman, an NYPD Deputy Inspector opposed to community policing); *see also* The City of New York, Office of the New York City Comptroller, Press Release: Cut $1.1 Billion in NYPD Spending Over Four Years and Reinvest in Vulnerable Communities and Vital Services, June 4, 2020, *available at* https://comptroller.nyc.gov/newsroom/comptroller-stringer-to-mayor-de-blasio-cut-1-1-billion-in-nypd-spending-over-four-years-and-reinvest-in-vulnerable-communities-and-vital-services/ (last visited March 1, 2025).
[9] *See* FAC ¶ 26-30.

that her information would remain anonymous.[10] Defendant Maddrey then placed Defendant Daughtry—not a trained member of the NYPD Special Victims Division—in charge of the investigation.[11] Plaintiff's rape kit was consistent with sexual assault.[12]

Between May 2020 and February 2022, Plaintiff engaged in protected speech critical of the Department, including through contact with members of the media known to NYPD Defendants.[13] Defendants NYPD Chief John Chell, Defendant Daughtry, Defendant Brian Adams, and Defendant Craig Edelman, whose own conduct had caused his transfer to another NYPD unit and replacement by a community-led policing advocate following criticism by Plaintiff, were particularly incensed by Plaintiff's conduct.[14] Defendants, including Defendant Maddrey, issued an edict preventing Plaintiff from entering public spaces within the confines of the 73rd Precinct, which covers the neighborhood of Brownsville, Brooklyn, where Plaintiff conducted her work.[15] On April 8, 2021, Defendants including Defendants Brian Adams and John Chell falsely informed a members of the public with whom Plaintiff had professional and personal relationships that Plaintiff had falsified the fact of her rape and had falsely accused a Black man of rape due to racial animus.[16] Plaintiff informed Defendant Maddrey of this issue, identified Defendants Chell and other NYPD members as perpetrators, and begged him to intervene.[17] Defendant Maddrey replied via text message on April 12, 2021, stating, "I spoke to everyone on my side, there will be no further issues."[18] However, neither Defendant Maddrey nor any other Defendants would intervene on Plaintiff's behalf, either in 2021 or thereafter.

---

[10] *See* FAC ¶ 32-34.
[11] *See* FAC ¶ 34.
[12] *See* FAC ¶ 35-36.
[13] *See* FAC ¶¶ 56-85.
[14] *See* FAC ¶¶ 56-74.
[15] *See* FAC ¶¶ 72.
[16] *See* FAC ¶¶ 86-98.
[17] *See* FAC ¶¶ 104-105.
[18] *See* FAC ¶ 106.

Plaintiff's close working relationship with the Department ended, and Plaintiff relocated in an attempt to continue her work. Then, in February 2022, following a widely publicized *New York Times* piece critical of traditional policing tactics in which Plaintiff and allies of community policing had participated, Defendants authored a written letter and mailed the same to City officials, Plaintiff's professional contacts, and additional community members, which included Plaintiff's personal home address and highly private and confidential information concerning certain details of Plaintiff's sexual assault and the investigation known to the NYPD, and which falsely claimed, *inter alia*, that Plaintiff had fabricated the fact of her rape, had falsely accused a Black man, and that that the NYPD and Brooklyn DA's Office had both closed the case and proven that Plaintiff had falsified the fact of her rape, claims that are demonstrably and materially false.[19] In April 2022, Defendants authored and mailed a second letter to City officials, which took the form of a typical departmental 49-Memo, and was titled "Beware of the Wolf in Sheep's Clothing: The Racist Branding Police Officers as Racist."[20] This second letter included additional private information known to the NYPD concerning Plaintiff's sexual assault, again included Plaintiff's home address, reiterated the false claims that, *inter alia*, Plaintiff had falsified the fact of her rape, and further falsely accused Plaintiff of "engaging in quid pro quo exchanges of sex" with NYPD members for information about program participants and engaging in criminal activity.[21] The memo included a section titled "Charm" to discuss these false allegations and to accuse Ms. Rachlin of using "feminine charm" to elicit information for criminal purposes.[22]

Defendants' conduct described above, and all other conduct detailed in Plaintiff's First Amended Verified Complaint (FAC), caused Plaintiff to suffer extensive injuries, including, *inter*

---

[19] *See* Exhibit 1, FAC ¶¶ 108-121.
[20] *See* Exhibit 2, FAC ¶¶ 122-130.
[21] *Id.*
[22] *Id.*

*alia*, in damage to her reputation and employment, emotional injuries, and deprivations including her right to privacy, including by constitutional right, her right to safety and privacy of her home, her right to be present in public places and to avail herself of public accommodations, and her right to engage in protected speech, and forced Plaintiff to expend costs, including in home security and the damage to and relocation of her nonprofit organization.[23] Accordingly, Plaintiff brings claims for 1) § 1983 Defamation ("Stigma Plus"), 2) Failure to Train and Failure to Discipline Pursuant to *Monell v Social Svcs*, 3) Failure to Intervene, 4) First Amendment Retaliation, 5) Violations of Plaintiff's Protection from Gender-Based Violence Pursuant to the New York City Admin. Code Civil Rights Law (NYCHRL), and 6) Unlawful Discrimination and/or Retaliation.

Defendants now move to dismiss Plaintiff's First Amended Verified Complaint (FAC) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules").[24] As discussed in greater detail herein, Plaintiff has sufficiently pled her claims to survive City Defendants' Motion to Dismiss, particularly at this preliminary stage of litigation, and maintains the sufficiency of all asserted causes of action. Plaintiff's First Amended Complaint ("FAC" or "Complaint"), attached exhibits, and materials incorporated by reference are referred to collectively as "the Pleading." In addition to the brief summary provided above and citations to Plaintiff's specific factual allegations contained elsewhere herein, Plaintiff respectfully directs this Court to the Pleading for a more detailed accounting of the facts giving rise to her claims.

RELEVANT PROCEDURAL HISTORY

Plaintiff filed her Verified Complaint on April 8, 2024. Prior to initiating the instant Action, Plaintiff exhausted potential means to ascertain the identity or identities of the letter and memo

---

[23] *See, e.g.*, FAC ¶¶ 146-156, 173-174, FAC *generally*.
[24] Plaintiff respectfully avers that Defendants' Motion may be appropriately considered a Partial Motion to Dismiss, as Defendants fail to address Plaintiff's Failure to Intervene claim on its face. *See* Point IV, *infra*.

author(s) and other information concerning the retaliation against her in efforts reaching back approximately two (2) years, including through information requests filed in October 2022 under the Freedom of Information Law (FOIL) and Public Officer's Law § 87 and a litigated appeal following the denial of this request by the NYPD.[25].[26]

On May 3, 2024, Defendants requested, with Plaintiff's consent, a 60-day enlargement of time to respond. ECF No. 18. The Court granted an enlargement to July 23. On July 18, Defendants requested a second 60-day extension of time, to which Plaintiff offered to consent to thirty (30) days. Defendants rejected this proposal and sought Court intervention. ECF No. 22. On August 15, 2024, the Parties appeared or a preliminary conference, where Defendants indicated possible intent to move for a partial Rule 12(b)(6) Motion to Dismiss but requested additional time to consider the pleadings. The Court, by Judge Lois Bloom (USMJ), granted Defendants until September 12, 2024, to file a pre-motion letter, or required all Defendants to answer the Complaint by September 20, 2024. On September 12, Defendants filed a letter confirming their intent to move for partial dismissal under Rule 12(b)(6). ECF No. 26. On November 7, 2024, the Parties appeared for an in-person conference before this Court. At this conference, Plaintiff indicated intent to amend her Complaint and was granted permission to do so by December 6, 2024, and the Parties were directed to file a proposed briefing schedule by December 13, 2024. *See* Court's Order, November 7, 2024.

Plaintiff served and filed her First Amended Verified Complaint and Exhibits ("FAC"), on December 6, 2024. ECF No. 31. As part of this amendment, Plaintiff also moved to voluntarily

---

[25] The FOIL does not govern disclosure under the Federal Rules, which strongly favor disclosure even in the presence of potentially applicable FOIL exemptions, including ongoing investigations. *See, e.g., Grossman v. Schwarz*, 125 F.R.D. 376, 380 (S.D.N.Y. 1989) ("New York's FOIL creates no statutory privilege from discovery in a civil action.") (citations omitted).

[26] As a point of clarification to Defendants' reference to a FOIL response received by Plaintiff prior to the Parties' November 7 conference concerning a concluded IAB investigation, DMOL p. 2: Defendants are referring to an IAB file opened in April 2024 following the filing of Plaintiff's Complaint. This "investigation" did not investigate Plaintiff's allegations against Defendants, and the records disclosed consisted primarily of Plaintiff's Complaint, exhibits, and related news coverage.

dismiss the claims against Defendants Caban, Shea, Sewell, and Parker pursuant to Rule 41(a). ECF No 33.[27] Plaintiff's FAC reduced the number of Plaintiff's claims from ten (10) to six (6) and otherwise clarified, amplified, and/or streamlined her allegations against the remaining Defendants in accordance with the limited information available to her. On February 14, 2025, in accordance with the amended briefing schedule (ECF No. 36), Defendants served the instant Motion.

STANDARD OF REVIEW

The movant in a Motion to Dismiss pursuant to Rule 12(b)(6) bears a high burden, as such motion must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass v American Film Technologies, Inc.,* 987 F.2d 142, 150 (1993); *Nogbou v Mayrose*, 400 Fed. Appx. 617, 619 (2d Cir 2010) (citation omitted). City Defendants have failed to meet this burden.

The Federal Rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2). *See also, e.g.*, *Shamir v City of N.Y.*, 804 F.3d 533, 556 (2d Cir 2015). Under this standard of review, the Court must accept as true all plausibly pleaded allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor as the nonmoving parties. *See, e.g.*, *Case, et al. v City of N.Y., et al.,* 233 F. Supp. 3d 372, 382 (S.D.N.Y. 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007). Along with the Complaint's allegations, the Court "may consider … documents attached as exhibits, and documents incorporated by reference in the complaint." *DiFolco v MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir 2010).

---

[27] Plaintiff and Defendants conferred and expressly agreed that language from the original Complaint inadvertently retained in the FAC in error, including the use of "Defendant" in certain fact paragraphs when referring to individuals who were voluntarily removed as defendants in this matter, are considered struck to avoid their unnecessary litigation herein. These agreements include the non-substantive language contained in FAC ¶¶ 131, 133, and p. 22, n.13.

Motions to dismiss complaints for legal insufficiency under Rule 12(b)(6) "are not occasions for arguing cases on contested facts, occasions which arise later in the course of the lawsuits." *See SEC v Medallion Fin. Corp.*, 2022 U.S. Dist. LEXIS 137463. The standard is clear: Where there is enough factual matter to "'nudge [plaintiffs'] claims…across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v Iqbal,* 556 US 662, 680 (2008). While Defendants do not explicitly ask the Court to convert the Motion to Dismiss under Rule 12(b)(6) to a Rule 56 Motion for Summary Judgment, Plaintiff nevertheless notes that such a conversion, if sought, should be rejected in any event where, as here, there exists "genuine dispute as to any material fact." Rule 56(a). Therefore, for the purposes of this Motion, properly considered under Rule 12(b)(6), "all well-pleaded facts in the complaint are presumed true." *See Sillam v Labaton Sucharow LLP*, 2022 U.S. Dist. LEXIS 63516, *2.

In determining the sufficiency of a plaintiff's pleadings pursuant to Rule 12(b)(6), the pleadings are to be considered in their entirety. *See Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 US 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12[b][6] motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see, e.g.*, FAC ¶ 157 ("Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein."). Plaintiff need not repeat the factual allegations contained in her complaint for each Cause of Action asserted; rather, the Court considers whether Plaintiff's Pleadings, in their entirety, contain allegations sufficient to meet the elements of each claim. *Id*.

<u>ARGUMENT</u>

Defendants put forward three primary points of argument, which are each addressed in greater detail below. [28] For these reasons and in accordance with the sufficient factual allegations contained in the Pleadings, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and permit this Action to be litigated on its merits.

I.    PLAINTIFF SUFFICIENTLY PLED HER CLAIMS FOR § 1983 DEFAMATION (STIGMA PLUS) AND FIRST AMENDMENT RETALIATION.

Defendants address Plaintiff's First Claim for Relief, Defamation or Stigma "Plus" Pursuant to 42 U.S.C. § 1983, and Third Claim for Relief, First Amendment Retaliation, together under Point I. As a general matter, Defendants' arguments as to these claims, and all others, fatally fail to reflect that an analysis for Rule 12(b)(6) sufficiency purposes requires a plaintiff's pleadings to be considered in their entirety. *See Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 US 308, 322 (2007) ("Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12[b][6] motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see, e.g.*, FAC ¶ 157, Plaintiff's First Cause of Action ("Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein."). Plaintiff need not repeat the factual allegations contained elsewhere in the Pleadings for each Cause of Action asserted; the Court considers whether the Pleadings, in their entirety, contain allegations sufficient to meet the elements of each claim. *Id*.

Defendants' primary argument against the sufficiency of these claims is that Plaintiff has not attributed false statements to individual Defendants in her factual allegations. DMOL p. 12.

---

[28] Defendants' Argument section asserting grounds for dismissal begins on DMOL p. 12. Plaintiff does not abandon any of her claims or consent to join Defendants' accounting of contested facts, including any such claims or facts referenced in 12 pages of background in the DMOL but not addressed in Defendants' Argument.

Contrary to this assertion, Plaintiff has sufficiently pled facts establishing the specific conduct giving rise to her claims. *See, e.g.*, FAC ¶¶ 36-145. To the extent each perpetrator's yet-unknown true identity has been replaced with a fictitious "Doe" placeholder—or to the extent specific conduct has been attributed to an individual among a narrow group of identified defendants, a functional equivalent—this Court permits plaintiffs in § 1983 civil rights matters to proceed to discovery to ascertain the individual identities of such defendants and to amend accordingly *nunc pro tunc*, regardless of whether the statute of limitations has lapsed since filing. *See Hogan v Fisher*, 738 F.3d 509 (2d Cir. 2015) (permitting the substitution of John Doe defendants in § 1983 actions *nunc pro tunc*). Plaintiff timely filed her claims and has exercised due diligence, in efforts spanning at least two years prior to her initiation of this Action, in her pursuit of information concerning the identities of each individual and the exact extent of their respective conduct.  It is well-settled that Second Circuit does not apply Rule 15(c)(1)(c) to 42 U.S.C. § 1983 John Doe complaints, applying instead C.P.L.R. § 1024 and therefore expressly permitting the relation back for the substitution of Does' true identities even outside the applicable statute of limitations where, as here, Plaintiff has sought the true identities of Defendants by exercising due diligence. *Id*. Accordingly, the facts asserted by Plaintiff in her Pleading serve to meet and even exceed the pleading standard required to survive a motion pursuant to Rule 12(b)(6).[29]

Defendants in this matter attempt to capitalize on the stark inequity in the parties' respective access to information, a tactic to which plaintiffs in § 1983 civil rights matters are particularly vulnerable and which this Court and the Second Circuit have roundly rejected as cause to dismiss an otherwise well-pled complaint. *See Osterhoudt v City of NY* at *7 (E.D.N.Y. 2012) ("Should

---

[29] These arguments serve to emphasize the issue of disparate pre-litigation access to internal NYPD information, a matter routinely confronted by this Court and the civil litigants before it. *See, e.g.*, *Osterhoudt v City of NY*, 2012 US Dist LEXIS 139700, at *7 (E.D.N.Y. 2012) (10-cv-3173) (RJD) (RML). Though internal NYPD records become discoverable in litigation, they remain largely inaccessible to Plaintiff—an issue often, as here, exacerbated by institutional policies discouraging transparency—while squarely within the knowledge and control of Defendant City and its agents.

such a *de facto* policy or practice of mass arrests exist, it will not likely be shown by direct evidence. Aggrieved parties confront pleading standards that threaten their ability to press their claims beyond mere accusation. Sensitive to this formidable hurdle, [the Court] too conclude[s] that plaintiff has 'nudged [his] claims across the line from conceivable to plausible.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). In other words, precedent serves to establish that an individual's vast relative disadvantage in obtaining pre-litigation records generated and maintained by adverse governmental actors should not provide a basis for these same actors to avoid litigating civil rights claims on their merits.

It is within this context that Defendants cynically cast Plaintiff's Pleading as a dramatized series of baseless accusations. *See, e.g.*, DMOL p. 13 (claiming Plaintiff wildly attempts to blame "someone…anyone…they…one of them…any of them…") (ellipses Defendants'). At best, such statements by Defendants might be construed as a misstatement of the appropriate standard of review at the pleading stage; at worst, they echo City Defendants' weaponization of offensive tropes to discredit women who allege serious misconduct against powerful men.

Finally, Defendants' arguments here, though highly generalized, might be construed to tacitly argue that Plaintiff engaged in prohibited group pleadings. *See* DMOL p. 13. To the extent such argument might be considered, Plaintiff avers that she has not engaged in prohibited "group pleading" under the definition applied by this Court; this Court's precedence does not, as Defendants seem to indirectly argue, constitute a blanket prohibition against allegations that multiple Defendants engaged collectively in a violation or violations of Plaintiff's rights. *See Serrata v Givens*, 2019 U.S. Dist. LEXIS 64277 (E.D.N.Y. 2019) (rejecting group pleading argument where "the complaint refers to all the defendants collectively because all the defendants were, it alleges, on the scene and actively involved in the complained-of conduct."); *see also*

*Breton v City of New York*, 404 F. Supp. 3d 799, 815 (S.D.N.Y. 2019) (Rejecting defendant's group pleading argument where the complaint alleged that officers "each participated in the fabrication of evidence and the creation of police reports that omitted exculpatory evidence...[and] that these defendants forwarded the misleading evidence to the prosecutors.").

**A. Plaintiff has met her burden in establishing the "Plus" element of "Stigma Plus."**

Plaintiff's First Claim for Relief alleges Defamation or "Stigma Plus" pursuant to 42 U.S.C. § 1983. To prevail on a "stigma plus" claim, "a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." [30] *Sadallah v City of Utica*, 383 F3d 34, 36 (2d Cir 2004). As to this claim, Defendants argue that Plaintiff has not satisfied the "plus" element of "stigma plus." DMOL p. 12, Argument Point I(B). For the reasons stated below, this argument fails.

Plaintiff's damages extend beyond the injury in fact to her reputation and Plaintiff's related emotional injuries that, if analyzed exclusively for this purpose, would render a defamation claim cognizable under State law alone. *See Sadallah v City of Utica*, 383 F3d 34, 36 (2d Cir 2004) ("Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property"); *see, e.g.*, FAC ¶ 174 (enumerating deprivations of Plaintiff's protected interests including, *inter alia*, Plaintiff's property interest and right to be secure in her person and home following the publication of Plaintiff's private home address by Defendants). Plaintiff also alleges, *inter alia*, that she was prevented from conducting her work or even merely being present

---

[30] Defendants do not appear to contest, and Plaintiff does not place at issue, that the statements at issue satisfy the first prong, or the "stigma" element of "stigma plus." To the extent this element is considered, Plaintiff respectfully avers that she has established these statements as clearly defamatory, that she has sufficiently alleged them to be false, and that such statements have been attached as exhibits and/or sufficiently described to the extent necessary to more than satisfy this element of her claim. *See, e.g.*, *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47-48 (2d Cir. 2001) ("The gravamen of 'stigma' as part of a due process violation is the making under color of law of a reputation-tarnishing statement that is false.")

within the confines of the 73rd Precinct, which constitutes the neighborhood of Brownsville, Brooklyn, the myriad public spaces therein where Plaintiff was lawfully entitled to be present, and the locations where Plaintiff had been providing the services offered by her non-profit program We Build the Block, forcing her relocate her work. *See, e.g.*, FAC ¶¶ 72-76, 78, 80, 173; *see also Velez v Levy*, 401 F3d 75, 89 (2d Cir 2005) ("[T]he absence of a stringent 'source parity' requirement is hardly surprising, given our rules on *temporal* proximity…When government actors defame a person and—either previously or subsequently—deprive them of some tangible legal right or status, a liberty interest may be implicated, even though the 'stigma' and 'plus' were not imposed at precisely the same time.") (internal citations omitted).

Plaintiff's inclusion of damages and injuries that would independently fail to satisfy the "plus" element of "stigma plus" do not indicate that Plaintiff is attempting to backdoor a tort claim of defamation under New York State law. DMOL p. 16. There is simply no requirement that Plaintiff limit her statement of damages or injuries in the manner suggested by Defendants here, particularly as Plaintiff has advanced multiple causes of action permitting varying forms of relief. By alleging injuries and damages that *do* satisfy the "plus" element of "stigma plus," Plaintiff has eliminated the need for further analysis as to the sufficiency of this element of her claim.

To accept Defendants' arguments here and elsewhere in the underlying Motion would require this Court to adopt *ad hoc* and unduly burdensome standards for would-be plaintiffs. Plaintiff respectfully avers that her claim for § 1983 Defamation ("Stigma Plus") is sufficiently pled to survive Defendants' request for dismissal.

**B. Plaintiff has sufficiently pled facts establishing her claim for First Amendment Retaliation.**

Plaintiff's Third Claim for Relief, for First Amendment Retaliation, is sufficiently pled against the individual NYPD Defendants. *See, e.g.*, FAC ¶¶ 213-224. In attacking this claim,

Defendants rely upon substantially similar arguments as those set forth above, which would impose improperly enhanced pleading burdens on Plaintiff, and attempt to litigate contested facts (*see* DMOL pp. 14-16). Plaintiff's conduct as described, including in verbally criticizing the policies of a police department and speaking to members of the media, are clearly protected under the First Amendment. Though Defendants specifically allege that Plaintiff failed to sufficiently assert facts establishing that Defendants' conduct chilled her participation in protected activities, this is simply not so. *See, e.g.*, FAC ¶ 77 ("[Plaintiff] was denied from and/or chilled in seeking grants and community partnerships and was forced to rearrange her practice to avoid areas where she was at stated risk of reprisal by Defendants. [Plaintiff] was denied access to police precincts and other public accommodations."); *see also* FAC ¶ 150 "Defendants chilled Ms. Rachlin's constitutionally protected conduct by discouraging her from seeking professional opportunities for fear of being forced to share the details her sexual assault and defend the veracity of her valid claims.").

Though Defendants repeatedly attempt to challenge Plaintiff's sufficient factual assertions by presenting Defendants' own version(s) of the events between Plaintiff and Defendants, this serves only to establish the existence of factual disputes that cannot and should not be litigated as part of the instant motion. *Compare* DMOL p. 16 ("Defendants withdrew from a formerly fruitful, positive partnership with Plaintiff…This was not retaliation. Defendants made a legitimate, reasonable decision to end a partnership that had turned sour - indeed - rancid.") *with* FAC ¶ 170 ("Defendants falsely stated that [Plaintiff] had fabricated the fact of her rape, that she had actively attempted to seduce the man she accused before this false accusation, that she had falsely accused a Black man due to rejection and racial animus, that she had engaged in criminal conduct to access confidential police information, including information stored in the NYPD's Gang Database, for criminal purposes, and that she had committed crimes related to evidence tampering.").

II.    PLAINTIFF SUFFICIENTLY PLED FACTS ESTABLISHING MUNICIPAL LIABILITY UNDER *MONELL*.

   **A. Plaintiff sufficiently pled claims for Failure to Train and/or Supervise under *Monell*.**
       Plaintiff's Second Claim for Relief alleges municipal liability against Defendant City

pursuant to 42 U.S.C. § 1983 and *Monell v Social Svcs* based upon two grounds: Failure to Train

and/or Supervise and Failure to Investigate and/or Discipline. *See* FAC ¶¶ 175-202. Defendants'

arguments against these claims are flawed in overlapping and equally fatal ways.

       As a preliminary matter, Defendants' bare assertion that Plaintiff did not suffer a

constitutional violation, to the extent such bare assertion is credited as a challenge to Plaintiff's

claims, is inaccurate and further constitutes an attempt to place disputed facts at issue. *See, e.g.*,

*Poe v Leonard*, 282 F3d 123, 139 (2d Cir 2002) (denying defendant's motion for summary

judgment and finding that plaintiff had established the violation of a constitutional right for § 1983

purposes where she "independently asserted a violation of her substantive due process rights

because [defendant's] behavior, if proven, shocks the conscience.") *citing County of Sacramento*,

523 U.S. at 845-46.

       In addition to the rights specifically alleged under additional causes of action asserted by

Plaintiff, Plaintiff has alleged facts establishing, *inter alia*, the violation of her constitutional right

to privacy. The Second Circuit has "explicitly recognized the right to privacy in one's personal

information, including information about one's body." *Hancock v County of Rensselaer*, 882 F3d

58, 65 (2d Cir 2018) (citing cases). This Court has expressly recognized a constitutional right to

privacy for the private and personal information of victims of sexual violence: "As in the context

of personal financial and medical disclosures, the right to confidentiality encompasses protection

against the public dissemination of details of a sexual assault… Therefore, there is a confidential

interest and right to privacy regarding the details of a sexual assault." *Nassau County Emple. "L"*

*v County of Nassau*, 345 F Supp 2d 293, 302 (E.D.N.Y. 2004), *citing Bloch v Ribar*, 156 F3d 673,

685 (6th Cir 1998) (affirming a constitutional right to privacy) ("Victims of sexual violence frequently encounter misdirected criticism and scrutiny that compounds their injuries. In particular, a tradition of 'blaming the victim' of sexual violence sets these victims apart from those of other violent crimes. Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal choices regarding sex.").

Plaintiff has also clearly established, as required to support a claim alleging failure to supervise, that Defendant City and its Defendant Policymakers were "faced with a pattern of misconduct and [did] nothing, compelling the conclusion that the [city] has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). Likewise, Plaintiff has clearly established, as required to support a claim alleging failure to train, "that city policymakers were on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights but nevertheless chose to retain the program," and made a sufficient showing of a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for failure to train." *Abdulgalil Kaid Alwan v City of NY*, 311 F Supp 3d 570, 574 (E.D.N.Y. 2018).

Defendants are dismissive, to their detriment, of the extensive background information provided concerning the NYPD's history of mishandling both sexual assault investigations and the sensitive information related to such matters. Defendants refer to Plaintiff's documentation as "omnibus allegations" and handwave away well-documented instances of serious harm caused by the underlying NYPD policies as immaterial matters concerning "non-parties' conduct against

non-parties"[31] in concluding that Plaintiff has failed to establish *Monell* liability. DMOL p. 18. In fact, Plaintiff's sexual assault investigation was mishandled by Defendant City and its NYPD members, including in failing to ensure that the NYPD members investigating Plaintiff's case were trained in proper investigative techniques and in the protection of sensitive victim information, policies which permitted the access and dissemination of Plaintiff's sensitive and private information. *See, e.g.*, FAC ¶¶ 26-49.  This investigation and the related failures by Defendant City's NYPD to handle Plaintiff's private victim information as part of a Special Victims Division matter were mishandled in a manner consistent with the conduct and policy failures detailed in numerous investigations, reports, findings, and lawsuits occurring both before and after Plaintiff's injuries, which are cited by Plaintiff and incorporated by reference into her pleadings. *See, e.g.*, FAC ¶¶ 175-202. Both failure-to-train and failure-to-supervise claims require that the city's "need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007), *citing City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Plaintiff has sufficiently pled facts establishing these elements.

**B.  Plaintiff's Failure to Investigate and/or Discipline claims are likewise well-pled.**

Though also not directly addressed by Defendants, Plaintiff notes that she has firmly established facts necessary to support her claim for *Monell* liability against Defendant City for Failure to Investigate and/or Discipline, including through extensive documentation of both the individual Defendants' histories of misconduct while Defendant Policymakers failed to investigate and/or discipline these individuals, and of the *de facto* policies and practices underlying this claim. *See, e.g.*, FAC ¶¶ 203-212. Defendant City and its Defendant Policymakers' "persistent failure to

---

[31] As a basic matter and in accordance with the very premise of municipal liability, Defendant City *is* party to NYPD investigations, prior lawsuits, and additional examples establishing both the existence of widespread policies and practices and Defendant City's notice of the harms caused by the same.

discipline subordinates who violate civil rights…can 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.'" *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (an inference of indifference arises where "complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents"). Accordingly, the facts as alleged in the Pleading sufficiently establish Plaintiff's entitlement to relief under this claim.

For all claims, in addition to widespread and well-documented patterns of conduct, Defendant City's *Monell* liability also lies through the specific conduct of individual Defendants, each a policymaker for Defendant City. Under *Monell*, "a municipality may be liable for the acts of a single official — as long as that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto v N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Monell*, 436 U.S. at 694). Accordingly, Plaintiff has pled facts sufficient to survive Defendants' challenge to these claims under Rule 12(b)(6).

III. PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS ARE WELL-PLED.

Plaintiff brings two claims pursuant to Title 8 of the New York City Administrative Code, also known as the New York City Human Rights Law (NYCHRL). The first, asserted as Plaintiff's Fifth Claim for Relief, is for violations of Protections Against Gender-Based Violence pursuant to NYC Admin. Code Title 8, Ch. 11, § 10-1102, *et seq*. *See* FAC ¶¶ 231-240. The second, asserted as Plaintiff's Sixth Claim for Relief, is for Unlawful Discrimination and/or Retaliation pursuant to Title 8, Ch. 8, §§ 8-102 and 8-107(7). *See* FAC ¶¶ 241-249. A plain reading of the statutory language coupled with the facts as asserted in the Pleadings clearly establishes that Plaintiff has

satisfied all elements required to proceed with her claims under the NYCHRL. This Court established claims brought pursuant to private rights of action under the NYCHRL are not subject to New York State General Municipal Law requirements, including GML § 50-E (requiring a notice of claim) and GML § 50-H (requiring claimant's pre-litigation examination), and has further upheld a three year statute of limitations for HRL claims. *See Keles v Yearwood,* 254 F Supp 3d 466, 471 (E.D.N.Y. 2017); *see also Margerum v City of Buffalo*, 24 N.Y.3d 721, 727 (2015).

**A. Contrary to Defendants' claims and in accordance with applicable law, police departments are service providers subject to liability under the NYCHRL.**

As a preliminary matter, Defendants' reliance on *D.H. v City of New York* and related non-controlling case law in support of the proposition that NYPD members are not providers of public services under the NYCHRL is misplaced. DMOL p. 20, *citing D.H. v City of New York*, 309 F. Supp. 3d 52 (S.D.N.Y. 2018) and other cases. Indeed, the Southern District Court in *D.H.* readily dispensed with the same argument set forth by Defendants here, holding as a general matter "that the NYPD, its precinct houses, and the services offered by its officers qualify as a public accommodation and that the NYSHRL and the NYCHRL are broad enough to reach such services" and only partially granting defendants' motion on other grounds. *Id*. at 81.

The definition of "services" under the NYSHRL and NYCHRL "should be interpreted liberally." *Id.* at 80, *quoting Cahill v. Rosa*, 651 N.Y.S.2d 344 (N.Y. 1996). The NYCHRL requires its provisions "to be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." NYCHRL § 8-130; *see also Sullivan v Bdg Media*, 71 Misc 3d 863, 865 (Sup Ct, NY County 2021) ("The NYCHRL is to be construed more broadly than the NYSHRL in favor of plaintiffs alleged discrimination."). For similar reasons, Defendants' reliance on *Matter of LeTray*

*v New York State Div. of Human Rights* is misplaced; in *LeTray*, Appellate Division, Third Department held that, under the New York State Human Rights Law (NYSHRL), arrest and detention was not a "public service" provided *to the arrestee*; the Court expressly declined to find, contrary to Defendants' suggestion, that a police department and its members may not otherwise be governed as service providers under the NYSHRL. *Compare* DMOL p. 20 *with Matter of LeTray v New York State Div. of Human Rights*, 181 A.D.3d 1296 (making a narrow finding that an arrest and detention was not a service provided "*to those arrested and detained*" under the NYSHRL) (emphasis added) (citing cases). Ultimately, each matter cited as authority for this asserted position by Defendants may be fairly categorized as either standing in direct contradiction of Defendants' argument or as inapposite to the circumstances of the instant case. In this matter, Plaintiff was neither arrested nor detained by Defendants; indeed, as both a member of the public and as a victim and survivor of a sexual offense the NYPD was tasked with investigating on her behalf, Plaintiff was availing herself of the very public services clearly offered by police departments, contemplated under the NYCHRL, and readily distinguishable from actions excludable from this definition.

**B. Plaintiff's claim pursuant to NYCHRL § 10-1102, *et seq.*, is sufficiently pled.**

*i. Violent offenses are classified by statute, not in accordance with the colloquial understanding of terms such as "violent crimes."*

Defendants' remaining argument against Plaintiff's claim under NYCHRL § 10-1104 appears grounded in disbelief that individuals who have not committed physical battery may be plausibly accused of a "violent" crime or offense. *See* DMOL p. 20-21. Of course, defining "violent" crimes in the legal context is strictly a matter of statutory construction rather than adherence to a common understanding or colloquial usage of the term.[32] *See, e.g.*, Penal Law §

---

[32] In New York State, a common and illustrative example of this paradigm is the firearm possession charge of Penal Law § 265.03, Criminal Possession of a Weapon in the Second Degree ("CPW 2"). This charge is classified as a

70.02 (classifying violent offenses in New York State). Likewise, for these purposes, "crime of violence" is a term constructed by and for the NYCHRL requiring neither an act of physical harm nor the initiation of a criminal prosecution. *Doe v Doe*, 2024 NY Slip Op 24065 (NY County) ("The plain language [of § 10-1103] demonstrates that a plaintiff has a cause of action based on whether the individual engages in conduct that constitutes a crime of violence—not on whether the offender may or may not…be prosecuted for such crime."

A "crime of violence" under § 10-1103 has two elements: 1) defendant's conduct would constitute a misdemeanor or a felony and 2) this conduct posed a serious risk of physical harm to plaintiff. NYCHRL § 10-1102. For this conduct to be defined as "a crime of violence motivated by gender," the conduct constituting a "crime of violence" must have been "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." NYCHRL § 10-1103. As discussed further below, Plaintiff has sufficiently pled all elements of her claim.

*ii.  Plaintiff has sufficiently pled both elements of "crime of violence" under NYCHRL § 10-1103.*

Plaintiff sufficiently alleged that the described conduct would constitute a felony or misdemeanor offense. *See, e.g.*, FAC ¶ 235 ("Defendants' conduct constitutes a criminal offense under, inter alia, [P.L.] § 240.30[1][A] [Harassment in the Second Degree, a Class A Misdemeanor] and the Title 18 U.S. Code § 876 [Mailing Threatening Communications]"). This provision does not require the elements of any potentially applicable misdemeanor or felony offense to include

---

"violent felony offense" pursuant to P.L. § 70.02, rendering a person charged eligible for bail or remand under Criminal Procedure Law § 510.10 and carrying a 3.5 year mandatory minimum prison term. Though "violent" implies that the charge is brought pursuant to some allegation that a gun was fired, brandished, or otherwise utilized in the commission of a crime, there is no such element required to sustain a charge of CPW 2. *See, e.g.*, P.L. § 265.03(3). Simple possession of an unlicensed firearm discovered during a search of a civilian by police is generally charged as P.L. § 265.03, which, in addition to being classified as a "violent felony offense," is one of the primary top charges for which New Yorkers are incarcerated pretrial in Defendant City's jails. *See* NYC Open Data, Detained Individuals by Top Charge, *available at* https://data.cityofnewyork.us/Public-Safety/Daily-Inmates-In-Custody/7479-ugqb/about_data.

risk, threat, or realization of physical harm; plaintiff must, and here does, allege that defendants' complained-of conduct "presents a serious risk of physical injury to another." NYCHRL § 10-1103; *see, e,g.*, FAC ¶ 156 ("Defendants disseminated Ms. Rachlin's home address in a false and inflammatory memo, intentionally creating a direct threat to Ms. Rachlin's safety"); *see also* ¶ 236 ("Defendants' conduct, including by intentionally including Ms. Rachlin's personal address, including her apartment number, in widely disseminated defamatory documents, carried the risk of physical injury and constitutes a crime of violence under this provision.").[33]

*iii.   Plaintiff sufficiently alleged that this conduct was motivated by her gender.*

Plaintiff has sufficiently pled that the actions taken against her were "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." NYCHRL § 10-1103; *see, e.g.*, FAC ¶¶ 90-92 (describing statements made by Defendants John Chell and Brian Adams demonstrating gender-based animus, including statements falsely accusing Plaintiff of intentionally falsifying the fact of her rape by a man as a strategic ploy); *see, e.g.*, Exhibit 1 (written correspondence containing multiple statements demonstrating gender-based animus, including statements denying the veracity of Plaintiff's account of her sexual assault and accusations concerning Plaintiff's alleged promiscuity); *see also* Exhibit 2 (written correspondence containing multiple statements demonstrating gender-based animus, including statements accusing Plaintiff of falsifying her rape and utilizing "feminine charm" to seduce and manipulate men and engage in criminal activity). Defendants' conduct undertaken against Plaintiff was inarguably committed *because of* gender or *on the basis* of gender, as this conduct was

---

[33] Contrary to Defendants' assertions, there is also no requirement in these provisions requiring Plaintiff's 2017 rape or any other sexual assault to constitute the complained-of conduct giving rise to her claims under the NYCHRL. *See* DMOL p. 20 ("A sexual assault is a crime motivated by gender animus…But defamation does not fall within the definition of gender-based violence"); *but see* NYCHRL Ch. 10 §§ 1102-1106.Defendants appear to conflate the plain statutory definitions set forth under § 10-1103 with Plaintiff's status as a member of a protected class under NYCHRL § 8-107, which is conferred by her status as a survivor of sexual assault and is wholly distinct from the claim to which Defendants apply this argument.

specifically premised upon Plaintiff's status as a female survivor of sexual assault and is characterized by the dissemination of numerous allegations concerning sexual behavior involving Plaintiff as a woman in a heteronormative context. Plaintiff respectfully avers that the Pleading satisfies all elements required to support her claim for NYCHRL § 10-1102, *et seq.*

**C. Plaintiff's claim for Unlawful Discrimination and/or Retaliation under NYCHRL §§ 8-102, 8-107, and related provisions is sufficiently pled.**

Plaintiff's Sixth Claim for Relief, for Unlawful Discrimination and/or Retaliation, is likewise sufficiently pled against all individual NYPD Defendants, and Defendants' arguments fail for substantially similar reasons as those addressed above. Plaintiff respectfully refers the Court to FAC ¶¶ 241-249 for Plaintiff's application of the elements of this claim in accordance with the facts as asserted in the Pleading. Plaintiff has pled facts sufficient to establish that she was a victim of a sex offense classified under Penal Law § 130 and that she is therefore protected under NYCHRL § 8-102 from discrimination and retaliation based on her status. Plaintiff has further pled facts sufficient to establish that she was, in fact, retaliated against based on her status in violation of NYCRL §§ 8-102 and 8-107. Contrary to Defendants' assertions, Plaintiff has sufficiently pled facts establishing that Defendants refused Plaintiff free and equal access to a public accommodation in a manner constituting unlawful discrimination, including through prohibiting and/or limiting Plaintiff's lawful entry into public areas in Kins County and spaces expressly designated as open to public access within NYPD precincts. Plaintiff respectfully avers that the Pleading satisfies all elements required to support her claim for NYCHRL §§ 8-102, 8-107, and related provisions giving rise to her claim.

IV.    DEFENDANTS' REMAINING CONTENTIONS ARE WITHOUT MERIT

**A. Plaintiff has sufficiently pled facts establishing Defendants' Failure to Intervene.**

Plaintiff's Fourth Claim for Relief, alleging Failure to Intervene, alleges that the individual defendants knew of the harmful conduct of NYPD members but failed to intervene despite

possessing both notice and opportunity to do so. *See* FAC ¶¶ 225-230. Defendants' limited arguments concerning Plaintiff's Fourth Claim for Relief misconstrue this claim as sounding in municipal liability only and analyze the claim as one for "failure to protect" within the carceral context. DMOL p. 19. Though Plaintiff considers Defendants' failure to address this claim on its face as consent to the claim's litigation, rendering Defendants' motion a Partial Motion to Dismiss, and without placing this claim at issue, Plaintiff will briefly address the sufficiency of Defendants' arguments as applied to Plaintiff's claim for Failure to Intervene in the FAC.[34]

The Second Circuit unequivocally recognizes a duty to intervene for *any* constitutional violation. *See, e.g., Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129 (2d Cir 1997), citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir 1988). As the Second Circuit affirmed in *Anderson v Brannen*, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v Branen*, 17 F3d 552 (2d Cir 1994). The *Anderson* Court, though itself examining an excessive force claim, held: "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of other officers where that officer observes or has reason to know…that any constitutional violation has been committed by a law enforcement official." *Id*. at 557. A police officer is "under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir 2016); *see also* NOTES: POLICE MISCONDUCT AND THE DUTY TO INTERVENE: WHY

---

[34] Defendants address Plaintiff's claim as "failure to protect." To the extent the term for the claim asserted is placed at issue by Defendants, while Plaintiff has specifically pled Failure to Intervene and asserted sufficient facts to support this claim, because Courts treat claims labeled "breach of duty to protect" and "failure to intervene or protect" equally Plaintiff's claim would be sufficiently pled regardless of its title. *See, e.g.*, *Avila v Tenzie*, No. 19CIV11920VECGWG, 2021 WL 2882445, at *6 (S.D.N.Y. July 9, 2021), *report and recommendation adopted*, No. 19-CV-11920 (VEC), 2021 WL 3494726 (S.D.N.Y. Aug. 7, 2021); *Nunez v Goord*, 172 F. Supp. 2d 417,430 (S.D.N.Y. 2001).

STOP AT EXCESSIVE FORCE?, 73 Syracuse L. Rev. 397. Plaintiff has sufficiently pled facts establishing Failure to Intervene against Defendants. *See, e.g.*, FAC ¶¶ 230, 286, 99-107.

**B.  Plaintiff is entitled to the relief requested.**

Despite Defendants' stated concerns regarding Defendant City and punitive damages pursuant to NYCHRL § 8-502 (*see* DMOL p. 20), Plaintiff expressly seeks punitive damages for claims in which individual defendants may be held liable and actual damages for claims brought pursuant to § 1983 and *Monell* against Defendant City, in addition to all damages to which she is entitled in accordance with applicable law. *See* FAC p. 40, Conclusion and Demand for Judgment. As previously stated, Plaintiff does not assert State law claims of defamation. Defendants' remaining contentions are without merit, and are otherwise addressed through the arguments contained herein.

<u>CONCLUSION</u>

For these reasons, and in accordance with the facts asserted by Plaintiff in her Pleading, Plaintiff respectfully requests that this Court deny City Defendants' Partial Motion to Dismiss and permit this matter to be litigated on its merits. In the alternative, Plaintiff respectfully requests an opportunity to be heard for arguments before this Court.

**KAISHIAN & MORTAZAVI LLC**
*Attorneys for Plaintiff*

By: Maryanne K. Kaishian, Esq.
    55 Washington St., Suite 508
    Brooklyn, New York 11201
    T: (347) 662-2421
    E: eservice@kaishianlaw.com
